IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PNC EQUIPMENT FINANCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20 C 6773 |
| | ) | |
| FLASH LIMOUSINE, INC. | ) | |
| and KAYA ARMAGAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

PNC Equipment Finance, LLC has sued Flash Limousine, Inc. and Kaya Armagan. The Court has jurisdiction based on diversity of citizenship. In count 1 of its complaint, PNC alleges that Flash breached its loan agreement with PNC when it failed to resume monthly payments on the loan after a ninety-day deferral period. In count 2, PNC asks the Court to enter a replevin order allowing it to repossess a commercial vehicle that was collateral for repayment of the loan. In count 3, PNC asks the Court to compel Flash to surrender the vehicle. Finally, in count 4, PNC alleges breach of guaranty against Armagan arising from his failure to make the required payments. PNC has moved for summary judgment on all of its claims.

### Background

The following facts are undisputed except where otherwise noted. On March 23, 2017, PNC and Flash entered into an agreement (the Master Agreement), *see* Pl.'s Compl., Ex. 1, under which PNC financed Flash's acquisition of equipment on the terms

and conditions set forth in the Master Agreement and any executed promissory notes. On the same day, Flash signed an "Equipment Line of Credit Note" (the LOC Note) in which it "agreed to pay PNC the principal amount of $200,000.00 or such lesser amount as may be advanced by PNC for the benefit of Flash prior to the expiration date," and PNC "agreed to finance Flash's acquisition of equipment." *Id.*, Ex. 2. On March 27, 2017, PNC advanced $191,310.00 to Flash for the purchase of a 2017 Freightliner M2 106 truck tractor (the collateral). Under the Master Agreement, LOC Note, and a subsequently executed "notice of conversion," *see id.*, Ex. 3 , Flash was required to make monthly payments in the amount of $3,695.89 for sixty consecutive months beginning on March 28, 2018. To obtain the loan, Armagan executed a Guaranty Agreement guaranteeing full and prompt payment and performance of all of Flash's obligations to PNC. *See id.*, Ex. 5.

After the onset of the COVID-19 pandemic, Flash asked to defer its payments. PNC granted Flash a ninety-day deferral of payments from April 2020 to June 2020, requiring Flash to resume making payments on July 28, 2020. *See id.*, Ex. 6. Flash failed to resume payments on July 28, 2020, has not made any payments since, and has maintained possession of the truck tractor.

PNC has moved for entry of summary judgment on all of its claims. In support of its motion, PNC provides the relevant loan documentation as well as evidence establishing that neither Flash nor Armagan has made any payments on the loan since July 28, 2020. Also, although Flash argues that it "made timely payments until it requested [the] deferral," PNC has provided evidence showing that Flash was late on its payments in November 2019, December 2019, and January 2020. *See* Wilms Suppl.

2

Decl. ¶ 17 (dkt. no. 32-1).

Flash does not dispute that it stopped making payments that the parties' agreements, including the deferral, required it to make. Flash argues, however, that the COVID-19 pandemic was an unforeseen event that triggered the defenses of commercial frustration and impossibility. Armagan argues that because his income was impacted by unforeseen circumstances resulting from the pandemic, his duty as guarantor should be excused. Finally, Flash contends that PNC has no right to possession of the collateral and cannot maintain the replevin claim because it failed to provide proper notice before filing suit.

## Discussion

To succeed on a motion for summary judgment, the moving party must show that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, the Court draws all reasonable inferences in the light most favorable to the non-moving party. *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003).

**1. Breach of contract claims (Counts 1 and 4)**

Illinois law governs the parties' agreements. *See* Pl's Compl., Ex. 1 ¶ 7(k) (Master Agreement), Ex. 5 ¶ 22 (guaranty). Under Illinois law, to prevail on a breach of contract claim, a plaintiff must prove that a contract existed, all conditions precedent were performed, the defendant breached the contract, and the plaintiff suffered damages as a result of the breach. *Shubert v. Fed. Express Corp.*, 306 Ill. App. 3d 1056, 1059, 715 N.E.2d 659, 661 (1999). The only point that defendants dispute on PNC's claims under the Master Agreement and guaranty involves whether the doctrines

3

of impossibility and commercial frustration are viable defenses.

The doctrine of commercial frustration excuses performance of a contract when unforeseen changes in the circumstances render the contract meaningless. *Ill.-Am. Water Co. v. City of Peoria*, 332 Ill. App. 3d 1098, 1106, 774 N.E.2d 383, 390 (2002). The Illinois Supreme Court has stated, however, that it "is well settled that, when a party contracts to do a thing without qualification, performance is not excused" because an unforeseen contingency makes performance impossible. *Phelps v. Sch. Dist. No. 109, Wayne Cty.*, 302 Ill. 193, 198, 134 N.E. 312, 314 (1922). Similarly, contractual obligations can be excused under the doctrine of impossibility only if an "unanticipated circumstance" has made performance of the contract "vitally different" from what the parties initially contemplated. *Ill.-Am. Water Co.*, 332 Ill. App. 3d at 1106, 774 N.E.2d at 391. The doctrines of commercial frustration and impossibility are not applicable where the risk or circumstance is covered by a term in the contract. *Premo v. Julius Kessler & Co.*, 225 Ill. App. 530, 534 (1922) (citing *Texas Co. v. Hogarth Shipping Corp.*, 256 U.S. 619 (1921)). The Seventh Circuit has also stated that the doctrine of impossibility is merely a contractual gap filler and cannot be used "to alter an agreed upon allocation of risk." *First Nat. Bank of Chicago v. Atl. Tele-Network Co.*, 946 F.2d 516, 521 (7th Cir. 1991).

PNC argues, and the Court agrees, that under the express terms of the Loan, "[p]ayments are an absolute obligation of [the] Borrower," irrespective of any claims or demands Flash might have. Pl's Compl., Ex. 1 ¶ 4. PNC also contends that Flash assumed the risk that it would be unable to perform due to external conditions, as the Master Agreement states that the "Lender shall not be liable for loss or damage for any

4

reason such as . . . government regulations, strikes, embargoes, or other causes, circumstances or events." *Id.* ¶ 5.  The Court agrees.

A court may not interpret a contract in a way that would "render provisions meaningless"; when parties insert specific language into a contract, "it is presumed that it was done purposefully," and the language used must "be given effect."  *Thompson v. Gordon*, 241 Ill. 2d 428, 442, 948 N.E.2d 39, 47 (2011).  In addition, a party's rights under a contract "are limited by the terms expressed in the contract"; a court cannot "rewrite a contract to suit one of the parties."  *Wright v. Chicago Title Ins. Co.*, 196 Ill. App. 3d 920, 925, 554 N.E.2d 511, 514 (1990) (citing *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 132 Ill. App. 3d 325, 477 N.E.2d 30 (1985)).

Although the language that PNC points to in paragraph 5 of the Master Agreement is in a section titled "Delivery and Installation," the provision stating that the borrower has an absolute obligation to make payments is under a section titled "Payments."  *See* Pl.'s Compl. Ex. 1.  Given this term, the agreement cannot be read in any way other than requiring payment without qualification.

In *Phelps*, the Illinois Supreme Court held that the defendant school district was required to pay the plaintiff, a schoolteacher, her agreed-upon salary even though the school where she worked was closed for two months due to an influenza epidemic—likely the 1918-19 pandemic cited by some as the nearest historical precursor of the COVID-19 pandemic.  *Phelps*, 302 Ill. at 194, 134 N.E. at 312.  The court stated that if the school wanted to relieve itself from contractual liability, it should have included language in the contract to that effect.  *Id.* at 198, 134 N.E. at 314.  In *Commonwealth Edison Co. v. Allied-General Nuclear Services*, 731 F. Supp. 850, 855 (N.D. Ill. 1990),

5

Judge Posner (sitting by designation) stated that the doctrine of impossibility "governs only if the parties have not drafted a specific assignment of the risk."

In this case, the language of the contract makes clear that the parties did assign the risk of impossibility of performance when they entered into their agreements. As stated previously, the Master Agreement stated that Flash has "an absolute obligation" to make the required payments and that PNC "shall not be liable for loss or damage for any reason such as . . . government regulations, strikes, embargoes, or other causes, circumstances, or events." Pl.'s Compl., Ex. 1 ¶¶ 4, 5. The same is true of the Guaranty, which expressly provides that "[t]he Guarantor . . . *unconditionally* guarantees . . . prompt payment and performance of the Obligations." *Id.*, Ex. 5 ¶ 1(a) (emphasis added). Accordingly, the doctrines of commercial frustration and impossibility are not available as defenses to PNC's claims.

Flash also argues that there is a genuine factual issue regarding whether PNC mitigated its damages. According to Flash, PNC had a duty to "consider[ ] the circumstances surrounding Flash's business and its abilities to make repayments" and to grant a deferment period longer than the ninety days that it allowed. Flash cites no authority, however, to support proposition that PNC, to mitigate its damages, was required to modify the terms of the contract to make it more favorable to Flash—which is what Flash is contending. *See, e.g., FirstMerit Bank, N.A. v. Emerald Props., LLC*, Mo. 13 C 5961, 2014 WL 1292865, at *5 (N.D. Ill. Mar. 28, 2014) (surveying Illinois authorities); *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 921-22 (N.D. Ill. 2009).

The Court concludes that PNC is entitled to summary judgment on counts 1 and

6

4. Defendants do not dispute the amount claimed to be due—about $134,000 through the end of April 2021—but it will need to be updated to carry interest through the end of July 2021.

## 2. Replevin and detinue claims (Counts 2 and 3)

PNC also asserts claims in detinue and replevin. To succeed on a detinue claim, a plaintiff must prove that it is entitled to possession of the detained property and that the defendant is wrongfully in possession of it. *Gary Acceptance Corp. v. Napilillo*, 86 Ill. App. 2d 257, 262, 230 N.E.2d 73, 76 (1967). Similarly, a replevin action may be brought by a person entitled to the possession of wrongfully detained goods or chattels. *First Illini Bank v. Wittek Indus., Inc.*, 261 Ill. App. 3d 969, 970, 634 N.E.2d 762, 763 (1994) (citing 735 Ill. Comp. Stat. 5/19-101).

The only point disputed by defendants involves the question of notice. Typically, when a defendant is lawfully possessing property, a replevin claim cannot be brought until the plaintiff demands that the defendant surrender the property and the defendant refuses to do so. *Id.* In addition, due process requires "notice and an opportunity to be heard" before a seizure of goods takes place pursuant to a right of replevin, to "protect against [the] arbitrary deprivation of property." *Fuentes v. Shevin*, 407 U.S. 67, 80-81 (1972). A plaintiff is not required to make a demand, however, when the circumstances reflect that a demand would be futile. *First Illini Bank*, 261 Ill. App. 3d at 970-71, 634 N.E.2d at 763.

Flash argues that PNC cannot maintain its replevin claim because it failed to provide proper notice prior to filing the present suit. PNC cites *Harris-Intertype Corp. v. Donley Bindery Co.*, 26 Ill. App. 3d 140, 324 N.E.2d 668 (1975), as support for the

proposition that "service of the [c]omplaint can be considered the demand" and that no demand is required "where defendant [is] given ample opportunity" to return the property after notice that a suit has been filed. In *First Illini Bank*, however, the court said that it considered that language in *Harris-Intertype* dicta and that a "literal interpretation" would "excise the demand requirement" in replevin actions. *First Illini Bank*, 261 Ill. App. 3d at 971, 634 N.E.2d at 764.

PNC further argues that demand is not necessary under the facts of this case because the defendants "are clearly unwilling to comply with the demand as evidenced by their continued refusal to surrender the Collateral." In *Kee & Chapell Dairy Co. v. Pennsylvania Co.*, 291 Ill. 248, 126 N.E. 179 (1920), the Illinois Supreme Court held that demand was not necessary because both parties claimed that they were the rightful owners of the disputed property. Similarly, because Flash disputed that it was in breach of its contract with PNC, a pre-suit demand would have been unavailing. Accordingly, PNC was excused from making a demand before filing suit.

The Court concludes that PNC is entitled to summary judgment on counts 2 and 3 because no genuine issues of material fact remain on either claim and PNC is entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment on all of its claims. Plaintiff is entitled to entry of a money judgment against the defendants, jointly and severally, in the amount of $133,997.91 through April 30, 2021 (to be supplemented with additional interest through the end of July 2021), plus $11,248.63 in attorney's fees and costs, along with an order directing the defendants to

8

surrender the collateral within fourteen days after entry of judgment and directing the U.S. Marshal to use necessary force to repossess the collateral. Plaintiff is directed to update the amount of interest through July 31 and is to make a supplemental filing by July 30, 2021 detailing the total amount of principal and interest due. Plaintiff is also directed to provide a draft judgment order to Judge Kennelly's proposed order e-mail address by that same date. The case is set for a status hearing on August 3, 2021 at 9:00 AM, using call-in number 888-684-8852, access code 746-1053, though the Court reserves the right to vacate the status hearing if it determines no hearing is needed.

Date: July 25, 2021

_____
MATTHEW F. KENNELLY
United States District Judge